IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MICHAEL LEE MASTERS                                                PLAINTIFF

v.                      CASE NO.       2:10-CV-02198

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.  Procedural Background:**

The plaintiff filed his applications for DIB on July 23, 2007 (T. 107), alleging an onset date of July 17, 2007, due to plaintiff's heat stroke, gout, shoulder and kidney problems and high blood pressure. (T. 131) . Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on January 22, 2009.  Plaintiff was present and represented by counsel and the ALJ's found the Plaintiff was not disabled on July 31, 2009  Plaintiff filed a timely Request for Review and letter brief, submitting additional medical records. (Tr. 194-195, 327-356). On October 29, 2010, the Appeals Council issued an

-1-

Unfavorable Decision, which constitutes the Commissioner's final decision, at which point Plaintiff had exhausted his administrative remedies. (Tr. 1-4). In so doing, the Appeals Council noted that Plaintiff was approved on a new application for benefits and found disabled beginning August 1, 2009. (Tr. 2).

At the time of the administrative hearing, plaintiff was 34 years of age and possessed an Eighth Grade education. The Plaintiff had past relevant work ("PRW") experience as a Roofer (T. 132).

On July 31, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's acute renal failure, gout and status post heat stroke did not meet or equal any Appendix 1 listing. T. 54. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand and/or walk for about six hours in an eight hour work day and that he could occasionally climb, balance, stoop, crouch, kneel, and crawl but that he could have no exposure to extreme heat and that he could perform unskilled work. T. 54. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the functions of bench assembler, laundry worker, and poultry eviscerator. T. 58.

## II.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider

evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national

economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.   Discussion**:

    The ALJ's determination that the Plaintiff's impairments did not qualify as a listed impairment is not disputed by the Plaintiff and is supported by the record.

    The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand and/or walk for about six hours in an eight hour work day and that he could occasionally climb, balance, stoop, crouch, kneel, and crawl but that he could have no exposure to extreme heat and that he could perform unskilled work. T. 54.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the functions of bench assembler, laundry worker, and poultry eviscerator. T. 58.  The Plaintiff disputes this finding.

**A.  RFC**

    RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th

Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

On September 26, 2007, William Collie, M.D., an agency medical consultant, opined that Plaintiff had the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently; to stand or walk for about 6 hours in an 8-hour workday; to sit for about 6 hours in an 8-hour workday; and to push and pull without limitations, other than as assessed for lifting and carrying (Tr. 276). Dr. Collie also opined that Plaintiff had environmental limitations and should avoid moderate exposure due to extreme heat (Tr. 279). Dr. Collie further opined that Plaintiff had no postural, manipulative, visual, or communicative limitations (Tr. 277-279).

**1. Gout**

The standard of evaluation is not whether plaintiff experiences pain, but if the pain

alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him from performing any kind of work).

The Plaintiff was seen at Sparks ER on December 4, 2006 complaining of knee and foot pain (T. 267) and an x-ray found no fracture, dislocation, or osseous erosion and diagnosed the Plaintiff with joint effusion suprapatella bursa (T. 271). The Plaintiff appears to have been employed by Travis Lumber Company at the time (T. 116 & 266). When the Plaintiff appeared before Dr. Darryl Eckes, MD for a consultation in regards to a heat stroke he suffered at work on July 17, 2007 the doctor's Social History noted that the Plaintiff was "active". (T. 198). The physical exam performed by Dr. Eckes noted that there was no edema, fractures, clubbing or cyanosis associated with the Plaintiff's bones, joints and extremities (Id.). The Plaintiff's medications at the time were lisinopril,[1] indomethacin [2] and prevacid. [3] The Plaintiff acknowledged that when he did not take his gout medication his gout would flare up. (T. 207). At the time of discharge the Plaintiff's gout medication was changed to allopurinol [4] 300mg one time per day and clochicine 0.6 mg because the doctors felt that the gout medication he was taking at the time may have had an adverse reaction because of the extreme heat temperatures the

---

[1] Lisinopril is used to treat hypertension, congestive heart failure and to improve survival after a heart attack.

[2] Indomethacin is in a group of drugs called nonsteroidal anti-inflammatory drugs (NSAIDs). Indomethacin works by reducing hormones that cause inflammation and pain in the body. Indomethacin is used to treat pain or inflammation caused by many conditions such as arthritis, gout, ankylosing spondylitis.

[3] Prevacid (lansoprazole) belongs to a group of drugs called proton pump inhibitors. Prevacid decreases the amount of acid produced in the stomach. Prevacid is used to treat and prevent stomach and intestinal ulcers, erosive esophagitis (damage to the esophagus from stomach acid), and other conditions.

[4] Allopurinol (Zyloprim) is used to treat gout or kidney stones, and to decrease levels of uric acid in certain cancer patients.

Plaintiff was working under.  The discharge note stated that the clochicine could be used on an as needed bases if the Plaintiff improved and had no recurrent episodes of gout. (T. 205).

Dr. Michael D. Coleman, the Plaintiff's treating doctor for his heat stroke, noted in his examination of August 28, 2007 that the Plaintiff was complaining of a swollen right ankle but that he had no cyanosis, clubbing, or edema. (T. 317).  He also notes in his assessment that he doubts that the Plaintiff had been taking his medication as prescribed because of financial costs.  This seems to be substantiated because when the Plaintiff visited the ER at SEMMC on November 29, 2007 complaining of swelling in his right foot and knee he did not list allopurinol as a medication he was taking (T. 325).

On April 9, 2008 the Plaintiff presented to the Twin Cities clinic complaining of pain, swelling and redness of the right knee.  The Plaintiff stated to the clinic that he "was not supposed to take anymore of the gout medicine". (T. 332).  The clinic correctly informed the plaintiff that he was not to take anymore of the "nonsteroidals".  The physical exam revealed generalized swelling and tenderness but no cellulitis and no neurovascular defects were noted.  His range of motion was good but he did have pain on full abduction and flexion. (T. 332).  He was started back on Allopurinol 300 mg daily and his dietary intake was discussed. (T. 333).

On April 16, 2008, Plaintiff told Twin Cities physicians that he had significant improvement of his gout discomfort; that he felt his gout was actually gone and only had some residual discomfort in the right knee; and that he had been walking better and had not had any other discomfort that he had prior to his last visit (Tr. 331).

Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535,

540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

In this case it is clear that the Plaintiff's gout was reasonably controlled with medication and that the Plaintiff had voluntarily stopped taking the medication which resulted in symptoms reappearing.  The ALJ made accommodation in the Plaintiff's RFC for the risk associated with the Plaintiff's required medication by prohibiting any work performed in excessive heat.

It is also clear that the Plaintiff had complaints of gout for several years and yet had worked during the time he had this condition and worked at very strenuous jobs.  See *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005) (holding that working after the onset of an impairment is some evidence of an ability to work).

**2.  Heat Stroke**

Plaintiff had a heat stroke with renal failure on July 17, 2007 (Tr. 200-205). Dr. Bean felt that the Plaintiff had an "underlying analgesic nephropathy secondary to NSAID[5] use and He instructed the Plaintiff to stop his NSAID use (T. 205).  A CT scan of the liver on July 17, 2007 was normal (T. 212) and a renal ultrasound performed on July 18, 2007 was normal. Chest and abdomen x-rays were also normal (T. 217-219).

Michael D. Coleman, M.D., a treating physician at Cooper Clinic, noted on August 27, 2007, that he was seeing Plaintiff to followup on his symptoms associated with hypertension,

---

[5]Nonsteroidal anti-inflamatory drugs.

renal insufficiency, gout, and suspected analgesic nephropathy[6] (Tr. 317). Dr. Coleman noted that Plaintiff had no nausea, vomiting, anorexia, no swelling in his hands or feet, increased shortness of breath, or recurrence of his heat stroke (Tr. 317). Upon examination, Dr. Coleman noted that Plaintiff was in no acute distress; his extremities had no cyanosis, clubbing, or edema; and had some swelling of his right ankle, with some slight redness (erythyma), increased temperature, pain on motion, and limitation of motion (Tr. 317). Dr. Coleman noted that Plaintiff had resolution of his acute renal failure (Tr. 318) and there was no diagnosis of analgesic nephropathy.

The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000).

The court notes that the Plaintiff filed for his disability on August 8, 2007 (T. 107) alleging an onset date of July 17, 2007 and stated in his disability report that he "had a heat stroke on July 17, 2007 and have not been able to work since that time". (T. 131).  However, there is nothing in the medical records to indicate that the Plaintiff suffered a disability as a result of his heat stroke on July 17, 2007 and all of the medical evidence is that her fully recovered from the heat stroke.  As the ALJ pointed out none of the Plaintiff's treating physicians ever restricted the Plaintiff from work.

### 3. kidney problems

---

[6] Toxic damage to one or both kidneys resulting from the consumption of excessive amounts of nonsteroidal antiinflammatory drugs (NSAIDs) or similar analgesic medications.

The Plaintiff also alleged disability due to kidney problems. The Plaintiff was initially seen by Dr. Dr. Coleman who was with the Nephrology Department[7] at Cooper Clinic on July 19, 2007 for a likely aneurysm with acute oligoanuric renal failure in the setting of heatstroke with rhabomyalysis shock with a history of hypertensive vascular disease and chronic Indocin therapy. (T. 202). The Plaintiff had reported that he had been taking Indocin "daily for the last two weeks" (T. 200). Dr. Coleman noted that with "judicious volume repletion, his renal function in improving and hopefully we can avoid dialysis" (T. 202).

The Plaintiff was seen by Dr. Coleman at Cooper Clinic on August 17, 2007 for renal insufficiency and suspected analgesic nephropathy secondary to Indocin consumption. (T. 317). Dr. Coleman was of the opinion that his renal failure had resolved and he did not diagnose the Plaintiff with any renal insufficiency. (T. 317-318) The Secretary's regulations for evaluating medical opinions specify, "We generally give greater weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.927(d)(5). *See also Brown v. Astrue*, 611 F.3d 941, 953 (C.A.8 (Ark.),2010). There is nothing in the medical records that indicates the Plaintiff has suffered any disability as a result of his heat stroke incident on July 17, 2007 and all evidence is to the contrary.

**4.  Shoulder Pain**

The Plaintiff complained of shoulder pain on August 13, 2007 (T. 309) and on February 8, 2008 (T. 308) when the Plaintiff was also complaining of a cough and sinus problems. It is unclear how this complaint relates to his disability claim. It may be that the Plaintiff's gout will

---

[7]The medical science that deals with the kidneys, especially their functions or diseases.

affect a shoulder joint but the court has already noted that the Plaintiff's gout can be controlled by medication.

### 5. High Blood Pressure

The Plaintiff blood pressure was 123/83 on 06/11/07 (T. 225); 130/80 on 07/18/07 (T. 200); 137/84 on 7/30/07 (T.223); 146/89 on 11/28/07 (T. 322); 141/104 and 140/100 [8]on 04/16/08 (T. 332). The Plaintiff has been repeatedly diagnosed and treated for hypertension. The ALJ took the Plaintiff's high blood pressure into account by limiting him to light work.

### B. Credibility

The ALJ noted that Plaintiff testified that he was unable to work due to renal deficiency, gout, and a history of heat stroke; that he has joint pain due to swelling in the feet and left knee; and that he has to use a cane and uses crutches at times (Tr. 20, 25-28, 55). The ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effect of pain or other symptoms are not substantiate by objective medical evidence" he had to make a finding on the Plaintiff's credibility (Tr. 55).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The

---

[8] It does not appear the Plaintiff was on any blood pressure medication at this time because the clinic "restarted Lisinopril" on that date. (T. 333).

ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* In the present case, the ALJ failed to acknowledge or discuss the factors in his credibility assessment of plaintiff.

(1) the claimant's daily activities;

The Plaintiff completed a Function Report on August 20, 2007 which indicated that he could "usually" perform all aspects of personal care but when he could not he got assistance from his wife (T. 151) that he did not prepare meals or do house or yard work (T. 152), that he can ride in a car, does not go out alone and has not driven since disability (July 17, 2007) (T. 153). The record indicates that during the 3rd quarter of 2007 the Plaintiff only made $632 working as a roofer but in the 4th quarter the Plaintiff made $1,643.00. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005) (holding that working after the onset of an impairment is some evidence of an ability to work). The Social History notes of Dr. Eckes indicated that the Plaintiff was "active" and there is no medical evidence that the heat stroke had any lasting effect on the Plaintiff.

(2) the duration, frequency, and intensity of the pain;

The Plaintiff testified that he would "have a bad day" a couple of time a week (T. 31) and that there were times when he could not do anything (T. 28) yet the Plaintiff on at least two occasions was not taking his gout medications that had been prescribed by Dr. Goodman. An ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription

medications, *Riggins,* 177 F.3d at 693.

       (3) dosage, effectiveness, and side effects of medication;

The Plaintiff acknowledged that he had been having attack of gout and began taking Indocin "on a regular basis" so he could perform his work as a roofer. (T. 200). According to the medical records the Plaintiff's doctors felt that his Incocin medication had a reaction when the Defendant suffered a heat stroke in Jul7 2007 and changed his medication to a Allopurinol. There is clear evidence in the record that this medication is effective and that the Plaintiff suffers symptoms when he does not take the medication. Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

       (4) precipitating and aggravating factors; and

The only precipitating and aggravating factor in the Plaintiff's case is the heat stroke he suffered on July 17, 2007 while performing his job as a roofer (Tr. 200-205). The Plaintiff acknowledge that this job entailed applying hot tar and frequently lifting over 100 pounds (T. 142). Michael D. Coleman, M.D., a treating physician at Cooper Clinic, noted on August 27, 2008, that he was seeing Plaintiff to followup on his symptoms associated with hypertension, renal insufficiency, gout, and suspected analgesic nephropath (Tr. 317). Dr. Coleman noted that Plaintiff had no nausea, vomiting, anorexia, no swelling in his hands or feet, increased shortness of breath, or recurrence of his heat stroke (Tr. 317). Upon examination, Dr. Coleman noted that

Plaintiff was in no acute distress; his extremities had no cyanosis, clubbing, or edema; and had some swelling of his right ankle, with some slight redness (erythyma), increased temperature, pain on motion, and limitation of motion (Tr. 317). Dr. Coleman noted that Plaintiff had resolution of his acute renal failure (Tr. 318).  The medical records are clear, that while the Plaintiff did suffer a heat stroke on July 17, 2007 with renal failure, this medical condition resolved with no after effects. There is nothing in the medical records to indicate that the Plaintiff suffers any pain as a result of his heat stroke.

    (5) functional restrictions

As the ALJ pointed out, none of the Plaintiff's treating physicians placed any restrictions on the Plaintiff as a result of his heat stroke and his gout is controlled with medication.  The Plaintiff had worked with his condition of gout prior to his incident with heat stroke and he worked with it after his heat stroke. There is no medical evidence that the Plaintiff's heat stroke in any way exacerbated his gout.

**C.  Fees**

The Plaintiff's request for fees is **DENIED.**

**IV.  Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

    Dated  this January 26, 2012.

                                                          */s/ J. Marschewski*
                                                      HONORABLE JAMES R. MARSCHEWSKI
                                                      CHIEF UNITED STATES MAGISTRATE JUDGE